IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GARY TORENCE SMITH, | ) | |
| AIS #166095, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:09-CV-1055-MEF |
| | ) | [WO] |
| | ) | |
| LOUIS BOYD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Gary Torence Smith ["Smith"], a state inmate,

challenges the constitutionality of actions taken against him at the Easterling Correctional

Facility ["Easterling"] during a search for contraband by members of the prison system's

Correctional Emergency Response Teams. Smith names as defendants in this cause of

action Louis Boyd, the warden of Easterling; Carter Davenport, a deputy warden at

Easterling; Richard Allen, Commissioner of the Alabama Department of Corrections at the

time of challenged actions; Kenneth Sconyers, Jeffery Knox, Phelix Woods, Ibeth Jones,

Marvin Scaffe and Timothy Allen, officers assigned to Easterling; and James Griffin, Otis

Smith, Irvin Dwayne Richardson, Jimmy Thomas, Antonio McClain, Marvin Thomas,

Dominic Whitley and officer Robinson, members of various Correctional Emergency

Response Teams.[1]

Specifically, Smith maintains that defendant Griffin used excessive force against him on February 5, 2009, while the other named correctional officers and response team members witnessed the use of force and failed to intervene, inaction that Smith maintains constituted aiding and abetting the assault. Smith alleges that defendants Boyd and Davenport were present at the facility during the assault by defendant Griffin but failed to protect him from the assault.  In addition, Smith maintains that the actions about which he complains occurred upon orders issued by Commissioner Richard Allen as evidenced by various statements made by correctional officers during the search and assault. Smith contends that the actions about which he complains resulted from a conspiracy among the defendants and constituted a criminal offense under state law.

Smith also maintains that the defendant correctional officers denied him use of a restroom for several hours while conducting the search. Smith complains that defendant Jones, a female correctional officer, was in the dorm in a position to view him naked during a strip search conducted by the male officers. Finally, Smith asserts that defendants Richard Allen and Louis Boyd failed to investigate his claims challenging the actions taken against him on February 5, 2009. Smith maintains that the actions about which he complains constituted cruel and unusual punishment as prohibited by the Eighth Amendment and

---

[1]The defendants advise that the correct spelling of defendant Scaffe's name is Scaife.  For purposes of this Recommendation, the court will refer to this defendant as he is identified by the plaintiff.

deprived him of due process and equal protection. He seeks a declaratory judgment, injunctive relief and monetary damages.

The defendants filed a special report, supplemental special report and relevant supporting evidentiary materials addressing Smith's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to construe these reports as a motion for summary judgment. *Order of April 2, 2010 - Doc. No. 64*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses to the motion, the court concludes that the motion for summary judgment is due to be granted in part and denied in part.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-- now dispute --] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

When the moving parties meet their evidentiary burden, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Smith is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim(s) for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and,

therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami,*

*Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts... . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence

7

such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Smith has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his excessive force, failure to protect from excessive force and attendant state tort assault and battery claims. The defendants, however, are entitled to summary judgment on Smith's claims regarding a violation of state criminal law, the lack of privacy from a female guard, the challenged deficiency regarding an internal investigation of his claims by correctional officials, a purported civil conspiracy, denial of a restroom and his allegations of due process and equal protection violations.

## III.  DISCUSSION

### A.  Absolute Immunity from Constitutional Claims

With respect to the alleged constitutional violations that Smith lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary

damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).  In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities for asserted violations of Smith's constitutional rights.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B.  Criminal Charges

Smith requests that state criminal charges for complicity be initiated against the defendants for their roles in the alleged violations of his constitutional rights.  *Amendment to the Complaint - Doc. No.* 23.  A "private citizen lacks a judicially cognizable interest in

the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Leeke v. Timmerman*, 454 U.S. 83 (1981). Consequently, Smith has no constitutionally protected interest in the criminal prosecution of any defendant and summary judgment is therefore due to be granted in favor of the defendants on this claim for relief.

To the extent that the complaint can be construed to assert that the alleged criminal actions violated Smith's constitutional rights under 18 U.S.C. § 241 and § 242, this assertion likewise provides no basis for relief. "Title 18 U.S.C. § 241 is a statute that criminalizes conspiracies against a person's rights under the Constitution or laws of the United States. There is no private right of action under this criminal statute. *Risley v. Hawk*, 918 F.Supp. 18, 21 (D.D.C. 1996), *aff'd*, 108 F.3d 1396 (D.C. Cir. 1997); *Dugar v. Coughlin*, 613 F.Supp. 849, 852 n.1 (S.D. N.Y. 1985).... Title 18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or laws of the United States. The statute does not create a private cause of action. *Powers v. Karen*, 768 F.Supp. 46, 51 (E.D.N.Y. 1991), *aff'd*, 963 F.2d 1552 (2nd Cir. 1992); *Dugar v. Coughlin*, 613 F.Supp. 849, 852 n.1 (S.D.N.Y. 1985)." *Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D.Tex 1997); *Rockefeller v. United States Court of Appeals Office for Tenth Circuit Judges*, 248 F.Supp.2d 17, 23 (D.D.C 2003) (plaintiff foreclosed "from asserting claims pursuant to 18 U.S.C. §§ 242 and 371 because, as

criminal statutes, they do not convey a private right of action....  Therefore, the Court must dismiss the plaintiff's claims that have been brought pursuant to 18 U.S.C. §§ 242 and 371.").  In light of the foregoing, Smith is precluded from obtaining relief under 18 U.S.C. § 241 and § 242 "because, as criminal statutes, they do not convey a private right of action" nor do they authorize an individual to initiate criminal proceedings.  *Gipson*, 18 F.Supp.2d at 668; *Rockefeller*, 248 F.Supp.2d at 23.

## C.  Lack of Privacy

Smith argues that the assignment of a female officer, defendant Ibeth Jones, to an area of Easterling where she could view him naked during the strip search conducted by male officers on February 5, 2009 violated his right to bodily privacy.  *Complaint - Doc. No. 1* at 12; *Amendment to the Complaint - Doc. No. 23* at 16.  The plaintiff is entitled to no relief on his privacy claim, as this court has previously decided this issue adversely to the position taken by Smith.  Specifically, the court determined that allowing female correctional officers unrestricted access to areas of prisons where they may, on occasion, view male inmates in the nude is reasonably related to valid penological goals.  In making this determination, the court reasoned as follows:

> Prisoners retain a constitutional right of bodily privacy subject to limitations reasonably related to legitimate penological interests. *See Fortner v. Thomas*, 983 F.2d 64 (1987); *see also Turner v. Safley*, 482 U.S. 78 (1987). A prison regulation which impinges on prisoners' constitutional rights is valid if reasonably related to legitimate penological interests. *Turner v. Safley, supra*.  In determining reasonableness, relevant factors

11

include (1) whether there is a valid, rational connection between the regulation and a legitimate and neutral governmental interest put forward to justify it, which connection cannot be so remote as to render the regulation arbitrary or irrational; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates, which alternatives, if they exist, will require a measure of judicial deference to the corrections officials' expertise; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, on inmates' liberty, and on the allocation of limited prison resources, which impact, if substantial, will require particular deference to corrections officials; and (4) whether the regulation represents an exaggerated response to prison concerns, the existence of a ready alternative that fully accommodates the prisoner's rights at de minimis costs to valid penological interests being evidence of unreasonableness. *Id.* at 2259-62.

The paramount penological goal is maintaining security of the institution, for the safety of the inmates, the staff and society. *See Whitley v. Albers,* 475 U.S. 312, 320 (1979). Because prisons contain an "ever present potential for violent confrontation and conflagration," [*Jones v. North Carolina Prisoners Labor Union, Inc.,* 433 U.S. 119, 132 (1977),] those who run prisons should be accorded wide ranging deference in the choice and execution of policies necessary to maintain order and discipline. *See Whitley v. Albers,* at 320; *Bell v. Wolfish,* 441 U.S. 520 (1979). The defendants assert that "if female correctional staff members were not allowed to work in the dormitory areas, it would cause logistical and security problems." *Affidavit of Defendant Mosley* at 1. [It is well settled] that violent incidents in the shower and bathroom areas occur often in male facilities and rarely at the Julia Tutwiler Prison for Women... . The assignment of female officers to all areas of the [correctional facilities in which male inmates are housed] is a reasonable attempt to promote the legitimate penological objective of prison security. *See Robinson v. Boulier,* 121 F.3d 713, 1997 WL 546036 (8th Cir. 1997) (table, No. 94-2593) ("[I]nstitutional concerns for security and equal employment opportunities outweighs whatever minimal intrusion on Robinson's privacy that might result from surveillance by female officers."); *Letcher v. Turner,* 968 F.2d 508, 510 (5th Cir. 1992) (endorsing the holding in an unpublished opinion, *Barnett v. Collins,* 940 F.2d 1530 (5th Cir. 1991) (table, No. 91-1038), wherein the Court held that no constitutional violation occurs when naked male inmates are viewed by female guards if the presence of female guards is necessary to maintain security at a correctional

12

facility); *Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990) (holding that "whatever minimal intrusions on an inmate's privacy [that] may result from such surveillance, whether the inmate is using the bathroom, showering, or sleeping in the nude, are outweighed by institutional concerns for safety and equal employment opportunities."); *Sypchala v. Rushen*, 877 F.2d 64, 1989 WL 67110 (9th Cir. 1989) (table, No. 87-2968) (holding that the presence of female guards while male prisoners are naked is incidental to the legitimate interest of maintaining prison security); *Grummet v. Rushen*, 779 F.2d 491, 496 (9th Cir. 1988) ("[t]o restrict ... female guards from ... occasional viewing of the inmates would necessitate a tremendous rearrangement of work schedules, and possibly produce a risk to both internal security needs and equal employment opportunities."). Thus, the use of female prison guards is reasonably related to a legitimate penological objective, and therefore, prisoners limited rights of bodily privacy must yield to that policy.

The policy of allowing female guards unrestricted access to inmates' living areas also serves other important interests. States have a compelling interest in eliminating discrimination against women. *Board of Directors of Rotary International v. Rotary Club of Duarte,* 481 U.S. 537, 549 (1987). The prohibition of discrimination in employment applies fully to women guards and to the extent that it is an operational or administrative necessity, nondiscrimination is also by definition a legitimate penological objective. *Kent v. Johnson,* 821 F.2d 1220 (6th Cir. 1987). To deny females the right to be assigned to all areas of an institution would deny those employees equal employment opportunities. Further, to restrict the female prison guards [employed at male prisons] from positions which involve occasional viewing of [nude] inmates would necessitate substantial rearrangement of work schedules and, as noted, could compromise both internal security needs and equal employment opportunities for the female guards. *Gurmmett v. Rushen*, 79 F.2d at 496.

Thus, under the *Turner* analysis*,* the prison's policy of placing female guards in all areas of prisons, while it may impinge on prisoners' right to privacy, nevertheless clearly meets the reasonableness standard as it has been shown to be related to the legitimate penological interests of security and nondiscrimination.

*Pierce v. Mosley, et al.*, Civil Action No. 98-A-884-N (M.D. Ala. 2001) - *Recommendation*

*of the Magistrate Judge* at 5-9 (footnote omitted), adopted as opinion of the court by Order

of July 25, 2001 (Doc. No. 35); *see also Miller v. Johnson, et al.,* Civil Action No. 99-A-1426-N (M.D. Ala. 2000) - *Recommendation of the Magistrate Judge* at 5-7, adopted as opinion of the court by Order of March 24, 2000 (Doc. No. 9) (Prisoner's right to bodily privacy is subject to limitations reasonably related to legitimate penological interests and assignment of female officers to all areas of an institution is a reasonable attempt to promote the legitimate penological objective of prison security. Moreover, this assignment also provides female guards employment opportunities equal to those of their male counterparts. The use of female prison guards is therefore reasonably related to a legitimate penological objectives and other important State interests. An inmate's limited rights of bodily privacy must therefore yield to such policy.). In light of the foregoing, the court concludes that the presence of defendant Jones in the area during a strip search of Smith performed by male officers did not constitute a violation of Smith's rights and the defendants' motion for summary judgment is due to be granted on this claim.

### D. Internal Investigation

Smith complains that defendants Richard Allen and Louis Boyd failed to investigate properly his claims regarding the actions taken against him on February 5, 2009. He further maintains that these defendants failed to punish those involved for their purportedly unlawful behavior. "Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights." *Almand v. DeKalb County,*

*Ga.,* 103 F.3d 1510, 1512 (11th Cir.1997) (citing *Whiting v. Traylor,* 85 F.3d 581, 583 (11th Cir.1996)); *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) ("It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere.").  Smith's claims that defendants Allen and Boyd violated his constitutional rights by failing to investigate his allegations and failing to prosecute those officials personally involved in the challenged actions do not implicate any constitutional right to which he is entitled; inmates simply do not enjoy a constitutional right to an investigation of any kind by government officials or the imposition of  punishment by these officials. *See DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment.).

## E.  Civil Conspiracy

Smith alleges that the assault about which he complains resulted from a conspiracy among the defendants to violate his constitutional rights.  Smith bases his claim on alleged comments made by correctional officers during the search that their actions were in

accordance with orders of the Commissioner for the Alabama Department of Corrections. The defendants adamantly deny they entered into a conspiracy to effectuate a violation of Smith's constitutional rights.

The assertions made by Smith with respect to a conspiracy are self serving, purely conclusory allegations which fail to assert those material facts necessary to establish the existence of a conspiracy. *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) (to state a claim for relief based on a conspiracy, a plaintiff must plead that the offending parties "reached an understanding" to deny the plaintiff his constitutional rights); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing parties "reached an understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy). Other than his bare allegations, Smith presents nothing to establish an actual conspiracy among the defendants to subject Smith or any other inmate to an unprovoked assault during the search at Easterling. In light of the foregoing, the court concludes that Smith's allegations regarding a conspiracy by the defendants are insufficient to support a claim for relief under 42 U.S.C. § 1983. *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557.

### F.  Refusal of Requests for Use of a Restroom

Smith alleges that defendants Scaffe and Jones denied requests by inmates to use the restroom during the search, causing several inmates to urinate in cups and in other areas

of the dorm.  Smith maintains that this action resulted in his being subjected to unpleasant odors.

Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (19891). "'[T]he Constitution does not mandate comfortable prisons.' *Id.* at 349, 101 S.Ct. at 2400.  If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' *Id.* at 347, 101 S.Ct. at 2399. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan***,** 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-1983.  However, not all pain suffered by an inmate "translates into a constitutional liability

for prison officials responsible for the victim's safety." *Id.* at 834. To obtain relief, the plaintiff must also present evidence that the constitutional violation caused him to suffer an injury. *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is ***obduracy and wantonness, not***

18

*inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must be a strong likelihood, rather than a mere possibility before [the responsible official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted).  As the foregoing makes clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under section 1983...." *Id*.

Pursuant to these criteria, Smith is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant[s'] deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on a claim arising from alleged

deliberate indifference by the defendants. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, a plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendant; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same).

The facts as alleged by the plaintiff fail to establish that the defendants' actions in denying some inmates access to a restroom for the duration of the search, although ostensibly harsh and restrictive, denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. Further, the record is devoid of evidence indicating that denial of restroom access for a limited period of time constituted a substantial risk of serious harm to Smith or caused him to suffer any injury. The record also contains no evidence showing that any defendant drew the requisite inference. *Carter*, 352 F.3d at 1350 (footnote omitted) ("Plaintiff has failed to establish that either Defendant had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff [from a lack of access to restroom facilities]; thus, Plaintiff has failed to establish a required element of this claim. When viewing the evidence most favorably toward Plaintiff, a claim

20

for deliberate indifference has not been established...."). Smith concedes as much in his response. *Plaintiff's Response - Doc. No. 76* at 51 ("This one act by itself might not be enough for a Eight[h] Amendment violation...."). Consequently, summary judgment is due to be granted in favor of the defendants on this claim. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

### G.  Equal Protection

Smith alleges that the actions of the defendants violated his right to equal protection. This claim entitles Smith to no relief.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed.... The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'... nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally."). In order to establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.

21

*Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact... . Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Smith bears the burden of producing evidence which would be admissible at trial sufficient to show the defendants provided more favorable treatment to other similarly situated individuals and acted in this manner due to intentional

discrimination. *Celotex*, 477 U.S. at 322-324; *Anderson*, 477 U.S. at 249 (to preclude summary judgment, plaintiff must present significant probative evidence showing defendant provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendant in providing the challenged disparate treatment is required. "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause."). The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment, nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252.

Smith fails to identify any similarly situated inmate who received differential favorable treatment from the defendants. Thus, Smith's "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319. This assertion likewise provides no basis for relief

> because [Smith] has not alleged ... that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest. He has not even claimed that he was treated differently from others because of race, religion, or national origin [and actually concedes the defendants proceeded against all inmates in the same manner]. *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful

23

administration ... of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett,* 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require ***identical*** treatment. There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." (internal quotation marks omitted)); *see also Cruz v. Skelton,* 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original). Thus, summary judgment is due be granted in favor of the defendants on Smith's claim alleging a violation of his equal protection rights.

## H.  Excessive Force[3]

At this stage of the proceedings, the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to [Smith]. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)." *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008). In this light, the facts are that on February 5, 2009, members of the

---

[3] Smith makes the general allegation that the defendants acted in violation of his right to due process with respect to his excessive force/failure to protect claims. These claims, however, are governed by the Eighth Amendment's prohibition against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). Since the excessive force/failure to protect claims fail to implicate Smith's due process rights, analysis under the Due Process Clause is not warranted.

Southern, South Central and Central Region Certified Emergency Response Teams conducted an institutional search at Easterling in an effort to locate weapons and other contraband.  During this search, defendant Griffin allegedly entered Smith's cell and ordered Smith to lie on his bed with his hands behind his head.  Smith complied with all orders issued to him.  Griffin then struck Smith "with a stick numerous times across the neck, shoulder and back" causing Smith to suffer "serious injuries both physically, and mentally... . My shoulder and back was bruised and swollen. I had bruises across my back.... I have permanent nerves and muscles damages ... [with] severe muscle spasms and chronic pains....  I have also been diagnosed with Post Draumatic Syndrome Disorder as a result of the beating [by officer Griffin]."  *Plaintiff's Response Exhibit T (Aff. of Gary Torence Smith) - Doc. No. 76-2* at 1-2. Defendants Boyd, Davenport, Sconyers, Knox, Woods, Jones, Scaffe, T. Allen, Smith, Richardson, J. Thomas, Robinson, McClain, M. Thomas and Whitley were present at the time of the assault by Griffin and allegedly failed to protect Smith from the assault.  Smith heard officers make statements during the incident "that their orders came from the commissioner" so prison regulations were irrelevant. *Amendment to the Complaint - Doc. No. 23* at 14.  Smith further maintains that defendant Richard Allen should have known members of the Certified Emergency Response Teams would violate his constitutional rights upon their deployment to Easterling for purposes of conducting a search as there had been other instances where team members used force

25

during institutional searches.

    1. <u>Commissioner Richard Allen</u>.  The law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability].... *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials

liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S at 677, 129 S.Ct. 1949.  Thus, defendant Richard Allen is liable for the force utilized by correctional officers against Smith only if he personally participated in the alleged unconstitutional conduct or if he acted/failed to act in a manner which he knew posed a substantial risk of serious harm to the plaintiff.  *Id*.; *Cottone*, 326 F.3d at 1360.

It is undisputed that defendant Richard Allen did not personally participate in the use of force about which Smith complains, nor was he present at Easterling at the time of the incident made the basis of the complaint.  Based on the foregoing, defendant Richard Allen may be held liable in this § 1983 action only if his actions bear a causal relationship to the purported violation of Smith's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of this defendant, Smith must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Allen] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal

27

punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Smith has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Commissioner Allen directed correctional officers to act unlawfully or knew that officers would act unlawfully and failed to stop such action. Commissioner Allen denies any involvement regarding the search and other actions which occurred at Easterling on February 5, 2009. *Defendants' Exhibit K - Doc. No. 50-11 (Aff. of Richard Allen)* at 1-2 ("I do not control the daily operation of Easterling Correctional Facility and had no involvement in the incidents of which Plaintiff complains."). The correctional officers deny making any reference to Commissioner Allen during the search at Easterling. *Defendants' Exhibit O - Doc. No. 50-15 (Aff. of Otis Smith)* at 1-2. The allegations that Smith makes regarding statements overheard during the search are clearly hearsay, and these alleged statements do not provide a basis for liability for Commissioner Allen. In addition, Smith has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Commissioner Allen failed to take corrective action. While Smith makes a conclusory, unsupported assertion with respect to "a 'history' and 'pattern' of similar incidents" of force by response teams, these allegations, without more, are insufficient to establish the requisite causal connection regarding his claims against defendant Richard Allen. Finally, the evidentiary materials submitted by the defendants demonstrate that the

actions about which Smith complains did not occur pursuant to a policy enacted by Commissioner Allen, nor were they due to a lack of supervision or training. Thus, Smith has failed to establish liability under the custom or policy standard. *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Consequently, neither method of establishing liability under the causal relationship test provides a basis for liability under § 1983. Summary judgment is therefore due to be granted in favor of defendant Richard Allen on Smith's excessive force/failure to protect claims.

2. Officer Robinson - C.E.R.T Member. Smith names officer Robinson as a defendant in this cause of action. Smith based the identification of this defendant on information received from another inmate that an "Officer Robinson" participated in the events which occurred at Easterling on February 5, 2009. *Plaintiff's Response - Doc. No. 76* at 55. In response to an order of this court requiring that the defendants provide addresses for various defendants on whom service had been returned, the defendants identified Patrick Robinson as the only officer named Robinson serving as a member of any of the Certified Emergency Response Teams employed by the Alabama Department of Corrections. The plaintiff did not challenge this assertion or provide additional information to identify any other officer Robinson, and service for officer Robinson was therefore perfected on Patrick Robinson.

In his response to the complaint, Patrick Robinson advises that he is a supervisor for "the Northern CERT team ... [and] was not present with the CERT team when they were at Easterling Correctional Facility on February 5, 2009...." *Defendants' Exhibit B (Aff. of Patrick Robinson) - Doc. No.* 50-2 at 1.  The incident report likewise establishes that no member of the Northern Certified Emergency Response Team participated in the challenged search.  Smith has no evidence to dispute this assertion, but argues Patrick Robinson should remain a defendant "unless the D.O.C. produces another Officer Robinson who was present during the searches." *Plaintiff's Response - Doc. No. 76* at 56. Smith also maintains that his claims against Patrick Robinson should survive summary judgment "until the outcome of this identification" issue is concluded.  *Id.*

The court cannot agree. Smith presents no evidence indicating that Patrick Robinson participated in the events made the basis of the complaint; instead, the only evidence before the court regarding Patrick Robinson establishes that he was not at Easterling on February 5, 2009.  Patrick Robinson is the only officer Robinson on whom service was perfected. In light of the foregoing, summary judgment is due to be granted in favor of Patrick Robinson.

3.  <u>Excessive Force and Failure to Protect</u>.  Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir.

1999).  The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8 (internal quotations omitted).  With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*.  However, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4.  "An inmate who is gratuitously beaten by [a prison] guard[] does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, __ U.S. __, 130 S.Ct.1175, 1178-1179 (2010).

Smith asserts that on February 5, 2009, defendant Griffin used excessive force against him without provocation in the presence of defendants Louis Boyd, Carter Davenport, Kenneth Sconyers, Jeffery Knox, Phelix Woods, Ibeth Jones, Marvin Scaffe, Timothy Allen, Otis Smith, Irvin Dwayne Richardson, Jimmy Thomas, Antonio McClain, Marvin Thomas and Dominic Whitley, and these individuals failed to intervene to protect him from Griffin's attack.  Defendant Griffin denies that he used excessive force against Smith, while the other defendants deny that they witnessed Griffin subject Smith to excessive force.

31

With respect to Smith's excessive force/failure to protect claims against defendants James Griffin, Louis Boyd, Carter Davenport, Kenneth Sconyers, Jeffery Knox, Phelix Woods, Ibeth Jones, Marvin Scaffe, Timothy Allen, Otis Smith, Irvin Dwayne Richardson, Jimmy Thomas, Antonio McClain, Marvin Thomas and Dominic Whitley in their individual capacities, the defendants argue that they are entitled to qualified immunity. However, the law of this Circuit precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich*, 280 F.3d at 1301. Thus, a qualified immunity defense is not available when a plaintiff alleges the use of excessive force, and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Id.* at 1302; *see also Hudson*, 503 U.S. at 9-10; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly, this court will consider whether the plaintiff's allegation that James Griffin maliciously and sadistically used excessive force against him while Louis Boyd, Carter Davenport, Kenneth Sconyers, Jeffery Knox,

Phelix Woods, Ibeth Jones, Marvin Scaffe, Timothy Allen, Otis Smith, Irvin Dwayne Richardson, Jimmy Thomas, Antonio McClain, Marvin Thomas and Dominic Whitley witnessed this attack without intervening to protect him – which the court must take as true for purposes of summary judgment – sets forth a violation of his Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

Smith contends that James Griffin repeatedly struck him with a stick across the neck, shoulders and back for no reason and while he posed no threat to Griffin. *Complaint - Doc. No. 1* at 16-17; *Amendment to the Complaint - Doc. No. 23* at 2; *Plaintiff's Response Exhibit T (Aff. of Gary Torence Smith) - Doc. No. 76-2* at 1. Smith maintains Louis Boyd, Carter Davenport, Kenneth Sconyers, Jeffery Knox, Phelix Woods, Ibeth

Jones, Marvin Scaffe, Timothy Allen, Otis Smith, Irvin Dwayne Richardson, Jimmy Thomas, Antonio McClain, Marvin Thomas and Dominic Whitley observed the attack by Griffin and refused to intervene. The body chart submitted by the defendants indicates that Smith reported to the healthcare unit on the afternoon of the incident complaining of pain on the right side of his neck. *Defendants' Exhibit S - Doc. No. 50-19* at 1. Smith maintains that the attack resulted in swelling and bruises across his back, permanent nerve and muscle damage, muscle spasms, chronic pain and Post Traumatic Stress Disorder. *Plaintiff's Response Exhibit T (Aff. of Gary Torence Smith) - Doc. No. 76-2* at 2.

The defendants deny Smith's claims regarding the use of excessive force and the failure to protect him from the alleged use of excessive force. Viewing the facts in the light most favorable to Smith, as is required at this stage of the proceedings, the court concludes that defendants James Griffin, Louis Boyd, Carter Davenport, Kenneth Sconyers, Jeffery Knox, Phelix Woods, Ibeth Jones, Marvin Scaffe, Timothy Allen, Otis Smith, Irvin Dwayne Richardson, Jimmy Thomas, Antonio McClain, Marvin Thomas and Dominic Whitley are not entitled to qualified immunity as the plaintiff has alleged facts sufficient to survive their motion for summary judgment. *Skrtich*, 280 F.3d at 1301. Consequently, the motion for summary judgment with respect to the excessive force claim and failure to protect claim lodged against the aforementioned defendants in their individual capacities is due to be denied. The court likewise concludes that defendant Griffin, at this stage of

the proceedings, is not entitled to summary judgment on the plaintiff's state tort claim – i.e., assault and battery – presented against him in his personal capacity.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment with respect to the plaintiff's constitutional claims for monetary damages lodged against them in their official capacities be GRANTED, as the defendants are entitled to absolute immunity from these claims.

2. The motion for summary judgment filed on behalf of defendants Richard Allen and Patrick Robinson regarding the plaintiff's claims against these defendants in the remaining aspects of their official capacities and in all aspects of their individual capacities be GRANTED.

3. The motion for summary judgment filed on behalf of defendants Louis Boyd, Carter Davenport, Kenneth Sconyers, Jeffery Knox, Phelix Woods, Ibeth Jones, Marvin Scaffe, Timothy Allen, Otis Smith, Irvin Dwayne Richardson, Jimmy Thomas, Antonio McClain, Marvin Thomas and Dominic Whitley regarding all claims contained in the complaint, with the exception of the plaintiff's failure to protect claim, be GRANTED.

4. The motion for summary judgment filed on behalf of defendants Louis Boyd, Carter Davenport, Kenneth Sconyers, Jeffery Knox, Phelix Woods, Ibeth Jones, Marvin Scaffe, Timothy Allen, Otis Smith, Irvin Dwayne Richardson, Jimmy Thomas, Antonio

35

McClain, Marvin Thomas and Dominic Whitley related to the plaintiff's failure to protect claim lodged against them in their official capacities seeking relief other than monetary damages and in all aspects of their individual capacities be DENIED.

5. The motion for summary judgment filed on behalf of defendant James Griffin regarding all claims contained in the complaint, with the exception of the plaintiff's Eighth Amendment excessive force claim and the state tort claim of assault and battery, be GRANTED.

6. The motion for summary judgment filed on behalf of defendant James Griffin as to the plaintiff's excessive force and state tort claim of assault and battery lodged against this defendant in his official capacity for other than monetary damages and in all aspects of his individual capacity be DENIED.

7. This case be set for a set for a jury trial before the District Judge assigned this case on (i) the plaintiff's claims of excessive force and assault and battery lodged against defendant James Griffin, and (ii) the plaintiff's failure to protect claim lodged against defendants Louis Boyd, Carter Davenport, Kenneth Sconyers, Jeffery Knox, Phelix Woods, Ibeth Jones, Marvin Scaffe, Timothy Allen, Otis Smith, Irvin Dwayne Richardson, Jimmy Thomas, Antonio McClain, Marvin Thomas and Dominic Whitley.

It is further

ORDERED that on or before July 17, 2012, the parties may file objections to the

Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 5th day of July, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE